United States Courts
Southern District of Texas
F I L E D

**APR 22 2019**

David J. Bradley, Clerk of Court

1  Edward D. Fagan, Pro Se
2  590 NE Wavecrest Way
3  Boca Raton, FL 33432
4  Tel. (561) 757-5432
5  Email: faganinternational@gmail.com
6       Applicant Pro Se

7               UNITED STATES DISTRICT COURT
8               SOUTHERN DISTRICT OF TEXAS
9
10      CASE #_____ **19 MC 1 1 8 1**

11 In Re:
12      Application of EDWARD D. FAGAN              |
13      pursuant to 28 U.S.C. § 1782 for Judicial Assistance in   |
14      obtaining evidence from (i) BANK OF AMERICA and   |
15      JUDAH ENTERPRISES and (ii) CITIBANK N.A. and   |
16      CITI PRIVATE BANK (collectively d/b/a CITIBANK)   |
17      and FIRST CITY LLC and FIRST CITY          |
18      for use in a Foreign Tribunal and Proceeding   |
19      _____
20
21               **APPLICATION FOR JUDICIAL ASSISTANCE**
22      **PURSUANT TO 28 U.S.C. § 1782 TO AID IN FOREIGN PROCEEDING**
23
24          EDWARD D. FAGAN (hereinafter "Applicant"), acting as a pro se Applicant, hereby

25  makes the following application for limited judicial assistance pursuant to 28 U.S.C. § 1782 to

26  aid in the several Foreign Proceeding(s) which are currently pending in and under ongoing

27  criminal investigation in the Republic of South Africa (SAPS Sinoville Case # 3471/1/2019) and

28  the FBI Field Office in New Orleans and on the basis of the fact and authority presented below

29  requests an order directing production of documentary evidence that is in the custody, possession

30  and/or control of witnesses (i) BANK OF AMERICA ("BoA") and JUDAH ENTERPRISES

31  ("JUDAH") ; and (ii)  CITIBANK N.A. and CITI PRIVATE BANK collectively d/b/a

32  CITIBANK ("CITI") and FIRST CITY LLC and FIRST CITY collectively ("FIRST CITY")

33  each of which can be found in and which do business in this District, each of which is being

34  given notice of this Application, and respectfully shows the Court the following:

**INTRODUCTION**

1.     This Application for Judicial Assistance is to obtain evidence as allowed pursuant to Section 1782(a), and the US Supreme Court in *Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) so that the evidence obtained from persons and entities residing and/or found within this judicial district so that evidence " . . . for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation."

2.     The evidence sought is for use the South African Police Services - SAPS Sinoville Case # 347/01/2019 investigation and future prosecution in which Applicant is the original complaining witness and which foreign proceeding is underway in the Republic of South Africa by the South African Police Services – Serious Commercial Crimes Unit – and in which the South African Interpol is being brought in due to the international nature of the wrongdoings.

3.     The evidence may also be used to assist with other investigations the existence of which Applicant learned after the commencement of the South African Police Service - SAPS Sinoville Case # 347/01/2019 including (i) the FBI Field Office in New Orleans in its investigation that was commenced prior to the South African Police Services – SAPS Sinoville Case # 347/01/2019, and in which Applicant has an interest, and in which Applicant's assistance, information and evidence in Applicant's possession has been and continues to be requested by the FBI Special Agent and Assistant US Attorney leading the investigation and future prosecution and (ii) the Royal Canadian Mounted Police (RCMP) investigation that was also commenced before South African Police Service - SAPS Sinoville Case # 347/01/2019 and which Applicant is informed are pending in British Columbia or Ontario and came as a direct result of an investigation conducted by the Santa Clara County Sheriff's Office into the wire

1    transfer(s) by one of Applicant's partners and predecessors to a Southern California shipping

2    company that was shipping stolen goods to Nigeria, as explained below.

3         4.    The South African foreign proceeding – SAPS Sinoville Case # 347/01/2019 is

4    against the person / entity who / which used, operated and/or controlled one of the domains

5    which was used to send the solicitation materials and fake documents that tricked Applicant, his

6    partners and predecessors into the fraud and which were part of the fraud that led to transfers for

7    which this Application is made.

8         5.    The details of the South African foreign proceeding – SAPS Sinoville Case No.

9    347/01/2019 is described in greater detail below. Attached as **Exhibit 1** are copies of March 1

10   and 27, 2019 emails from South Africa Police Services – Serious Commercial Crimes Unit -

11   Capt. Eric Chiloane - leading the SAPS Sinoville Case # 347/01/2019.  In the March 1, 2019

12   Email, Capt. Chiloane confirms the existence of the complaint, investigation and future

13   prosecutions; and states that the South Africa Police will welcome evidence that can be secured

14   through the US Courts and that evidence will be used in the future prosecutions.  In the March

15   27, 2019 email, Capt. Chiloane confirms that South African Interpol is being brought into the

16   case as it involved an international fraud.  Also included in Exhibit 1 are the Cover Sheets of

17   South African Police Services - SAPS Sinoville Case # 347/01/2019 file.[1]

18        6.    The details of the investigation being conducted by the FBI New Orleans field

19   office is also described in greater detail below. Attached as **Exhibit 2** are copies of several

20   emails from March 2019 from the FBI Special Agent Krista Bradford leading the New Orleans

21   Field Offices investigation of the Nigerian Fraud.

---

[1]    Applicant apologizes for the copy quality; however Applicant was informed that he was permitted to take a cell phone photo of the case folder covers but could not copy documents in the file.

1       7.    The details of the additional investigation by the Santa Clara County Sheriff's

2 Office which are directly related to this Application are described in greater detail below.

3 Attached as **Exhibit 3** is the email from Santa Clara County Sheriff's Det. Cody Cogliandro.

4 Det. Cogliandro informed Applicant that certain aspects of the Santa Clara Sheriff's

5 investigation were turned over to the FBI New Orleans Field Office investigation and others

6 were turned over to the Royal Canadian Mounted Police (RCMP) who were supposedly

7 investigating the fraud in which Applicant, his partners and predecessors were involved.

8       8.    The South African foreign proceeding – SAPS Sinoville Case # 347/01/2019 –

9 investigation and future prosecutions, as well as the FBI, Santa Clara County Sheriff's Office

10 and RCMP investigations and future prosecutions relate to one of the most sophisticated and

11 longest running "Nigerian type" internet banking scams.

12       9.    The scam / fraud committed against Applicant, his partners and predecessors,

13 started in or about 2016 and is ongoing. [2]

14       10.    The scam/fraud was a variations of what cyber-crime and the law enforcement

15 experts refer to as the "419 Letter Scam" [3], "Romance Scam" [4] and "Advance Fee Scam" [5] which

---

[2]     Applicant has been a victim of this fraud since early 2019.  Applicant acquired and owns 100 % of the rights of others including Russ Daneluk (victim of this fraud starting in late 2016/early 2017) and Mark Meiers (victim of this fraud since 2017), both of whom sent one or more of the transfers described herein.  **See Exhibit 4** - copy of the Assignments of Russ Daneluk and Mark Meier.

[3]     https://www.fbi.gov/scams-and-safety/common-fraud-schemes/nigerian-letter-or-419-fraud - Nigerian letter frauds combine the threat of impersonation fraud with a variation of an advance fee scheme in which a letter mailed, or e-mailed, from Nigeria offers the recipient the "opportunity" to share in a percentage of millions of dollars that the author—a self-proclaimed government official—is trying to transfer illegally out of Nigeria.

[4]     https://en.wikipedia.org/wiki/Romance_scam  - A romance scam is a confidence trick involving feigning romantic intentions towards a victim, gaining their affection, and then using that goodwill to commit fraud. Fraudulent acts may involve access to the victim's money, bank accounts, credit cards, passports, e-mail accounts, or national identification numbers; or forcing the victims to commit financial

1    include persons/entities connections to Nigeria, who have target persons in the United States and

2    Canada and which use private persons, banks, shipping, travel and other companies – such as

3    those identified in this Application, i.e. JUDAH and FIRST CITY - through which the scammed

4    monies are transferred.  The scam also involves the use of internet domain and email addresses,

5    through which the scammers send solicitations, fake documents and directions as to where the

6    scammed monies are to be transferred.

7          11.    Some of the information and facts upon which this Application is made came

8    from Santa Clara County Det. Cody Cogliandro who informed Applicant during a telephone

9    conversation on April 4, 2019 that his office's investigation of the wire transfers that were sent

10    by one of Applicant's partners and predecessors and that the Santa Clara Sheriff's Office

11    believed that Southern California shipping company appears to have unknowingly shipped

12    "stolen goods" to Nigeria and that Applicant's partners and predecessors' wires were

13    unknowingly paying for shipment of those stolen goods; and that Santa Clara Sheriff's

14    Department wanted to "stop more fraud from continuing" **See Exhibit 3** – December 1, 2017

15    Email to Applicant's partner and predecessor Mark Meier.

16          12.    The fraud committed against Applicant and his partners and predecessors and

17    which is the subject of The South African foreign proceeding – SAPS Sinoville Case #

18    347/01/2019 – investigation and future prosecutions, as well as the FBI, Santa Clara County

19    Sheriff's Office and RCMP investigations and future prosecutions involved the sending of

---

fraud on their behalf.[1][2] In many instances, a mail-order bride scam will also bait the victim into committing felonies to establish citizenship for the perpetrator.

[5]    https://www.fbi.gov/scams-and-safety/common-fraud-schemes/advance-fee-schemes - An advance fee scheme occurs when the victim pays money to someone in anticipation of receiving something of greater value—such as a loan, contract, investment, or gift—and then receives little or nothing in return.

1    instructions, invoices, directions and other information electronically – in part using fake

2    documents, email addresses and domains out of South Africa and the United States – through

3    which the Applicant and his partners and predecessors were directed to send monies to third

4    parties such as JUDAH with its account at BoA and FIRST CITY with its account at CITBANK

5    and the monies that were sent should have been accompanies by documents, invoices, directions

6    and other information to support the alleged transfer of these large amounts of money.

7         13.    This Application seeks specific/limited information from

8              a.  BoA and JUDAH about its' Acct # XXXXXXXX4874 at BoA and is where $

9                  60,000.00 in two transfers of $30,000.00 each by Applicant's partners and

10                 predecessors on October 15, 2018.  **See Exhibit 5** ; and

11             b.  CITIBANK and FIRST CITY about its' Acct # XXXX7981 at CITIBANK

12                 and is where $ 50,000.00 transfer was made by Applicant's partners and

13                 predecessors on November 2, 2017.  **See Exhibit 6.**

14        14.    The evidence that is or should be in the possession of (i) JUDAH and its above

15   referenced account at BoA and (ii) FIRST CITY and its above referenced account at CITIBANK

16   should show the persons or entities who were involved with that fraud that was committed

17   against Applicant and his partners and each of the witnesses should have documents, invoices

18   and other instructions that were used to send the monies to (i) (i) JUDAH and its above

19   referenced account at BoA and (ii) FIRST CITY and its above referenced account at

20   CITIBANK.

21        15.    This evidence is relevant to the South African foreign proceeding – SAPS

22   Sinoville Case # 347/01/2019 investigations and future prosecution.

16.     The evidence sought is limited to

a.  BoA and JUDAH about its' Acct # XXXXXXXX4874 at BoA and is where $ 60,000.00 in two transfers of $30,000.00 each by Applicant's partners and predecessors on October 15, 2018.  **See Exhibit 5** ; and

b.  CITIBANK and FIRST CITY about its' Acct # XXXX7981 at CITIBANK and is where $ 50,000.00 transfer was made by Applicant's partners and predecessors on November 2, 2017.  **See Exhibit 6.**

17.     Applicant is not seeking to circumvent any relevant evidence gathering laws. Applicant is not on a fishing expedition.  Applicant is not looking for persons or entities against whom/which civil claims can be brought.  Applicant is looking for information that will assist in the ongoing investigations and future prosecutions in South Africa foreign proceeding – SAPS Sinoville Case # 347/01/2019.  The evidence will also assist the FBI New Orleans Field Office investigations.  The South African and FBI investigations are both directed at the Nigerian Internet / Banking Fraud to which Applicant, his partners and predecessors fell victims and the investigation appear to overlap.

18.     The request for the specific information in the Application, i.e. information related to (i) BoA and JUDAH about its' Acct # XXXXXXXX4874 at BoA where $ 60,000.00 in two transfers of $30,000.00 were sent each by Applicant's partners and predecessors on October 15, 2018 (**See Exhibit 5**); and (ii) CITIBANK and FIRST CITY about its' Acct # XXXX7981 at CITIBANK where $ 50,000.00 transfer was sent by Applicant's partners and predecessors on November 2, 2017.  (**See Exhibit 6**).

19.     Applicant has been informed by the investigators that companies such as JUDAH

1    and FIRST CITY and their respective banks (BoA and CITBANK) should have documents that

2    will show (i) who gave the directions that the companies to allegedly justify their receipt of the

3    monies; (ii) who gave due diligence documents to BoA and CITIBANK to support its receipt of

4    monies and for what purpose the monies were being received by JUDAH and FIRST CITY; (iii)

5    what if any portion of the transfers that came from Applicant's partners and predecessors were

6    sent to other persons or entities; and (iv) other due diligence information necessary to support

7    such transfers.

8       20.    South African Police Services Capt. Chiloane confirmed that the information and

9    documents requested from banks – such as BoA and CITIBANK– which must have the

10   documents related to (i) instructions and communications that were given to the banks into which

11   and from which the fraud victim's wire transfers were sent and (ii) the information as to where, if

12   at any, monies may have been transferred onward.  This evidence, information and documents

13   will assist the South African Police Services – SAPS Sinoville Case # 347/01/2019 -

14   investigators and prosecutor prove the fraud cases and ensure that all the persons / entities

15   involved in and who / which benefitted from the fraudulent scheme are brought to justice.

16      21.    The request is not overly broad or burdensome and is limited to information

17   related (i) BoA and JUDAH about its' Acct # XXXXXXXX4874 at BoA where $ 60,000.00 in

18   two transfers of $30,000.00 were sent by Applicant's partners and predecessors on October 15,

19   2018.  **See Exhibit 5** ; and (ii) CITIBANK and FIRST CITY about its' Acct # XXXX7981 at

20   CITIBANK where $ 50,000.00 transfer was sent by Applicant's partners and predecessors on

21   November 2, 2017.  **See Exhibit 6.**

22      22.    The Application seeks only (i) information that was presented to BoA and

1    CITIBANK as part of the due diligence requirements to support the wire transfers and (ii)

2    information that was given to JUDAH and FIRST CITY with instructions as to what was to be

3    done with the monies and to whom certain monies, if any, were to be transferred onwards.

4         23.    South African Police Services Capt. Eric Chiloane confirmed in his March 1st

5    Email that the evidence that should be forthcoming from this Application is welcome and will be

6    helpful in the investigation and future prosecutions in SAPS Sinoville Case # 347/01/2019.  **See**

7    **Exhibit 1.**

8                          **FACTS RELATED TO THE APPLICATION**

9         24.    Applicant, his partners and predecessors are recognized by the South African

10   Police Services – SAPS Sinoville Case # 347/01/2019 as victims of a Nigerian fraud.

11        25.    The fraudulent scheme involved requests for monies made through emails sent to

12   and by a woman named "Kari Peters" (hereinafter "Peters") who was allegedly an heir to

13   inheritance assets that were held in Nigeria but which could be transferred to the United States.

14        26.    Applicant, his partners and predecessors were told that (i) the Inheritance Monies

15   and Assets to which Peters was allegedly entitled allegedly came from Peter's father (Grant

16   Peters) and Peters claimed the monies and assets were lawfully earned by her father as a result of

17   his alleged contracting business(es) in Africa; (ii) Peters came to know a Canadian national –

18   Paul Corkum (hereinafter "Paul") - a paraplegic living in Ottawa Canada, who Peters allegedly

19   met from her mother; and (iii) if Peters and Corkum were engaged to be married, Corkum would

20   be assigned the rights to the Inheritance Monies and Assets allegedly due to Peters.

21        27.    Peters and Corkum involvement in this matter began in 2016 and continues to the

22   present.

1       28.    Applicant, his partners and predecessors only became involved in 2017.

2       29.    Prior to Applicant's, his partners' and predecessors' involvement, Peters and

3  Corkum got Corkum's brother (Ken Corkum), his wife Kate O'Neill and their relatives to

4  transfer monies in furtherance of the fraud.

5       30.    The fraud was this:  In order to get the alleged Inheritance Monies and Assets

6  transferred into accounts that would be in their names, Peters and Corkum allegedly had to pay

7  certain monies for fees, services, customs, duties and other charges.

8       31.    Prior to approaching Applicant, his partners and predecessors, Peters, Corkum

9  and Corkum's relatives (Ken Corkum, Kate O'Neil and others) allegedly exhausted all their

10  resources and allegedly did not have the necessary additional monies to complete the transfer.

11       32.    In late December 2016 or early January 2017, Peters, Corkum and Ken Corkum

12  approached Applicant, his partners and predecessors to induce them to the possibility of

13  acquiring the Inheritance Monies and Assets by providing additional assistance and monies.

14       33.    Applicant, his partners and predecessors were offered rights and interests to the

15  Inheritance Monies and Assets in exchange for which Applicant, his partners and predecessors

16  would provide additional monies, resources and assistance to get the Inheritance Monies and

17  Assets transferred into account(s) where they could be legally distributed to Peters, Corkum and

18  Applicant, his partners and predecessors.

19       34.    Using the emails Applicant, his partners and predecessors were provided fake

20  documents in which Peters purportedly transferred her interests in the Inheritance Monies and

21  Assets to Corkum, who in turn transferred his interests to Applicant's partners / predecessors.

22       35.    On their face, the documents presented to Applicant, his partners and

1    predecessors appeared to be legitimate and there appeared to be no reason to doubt that the

2    Inheritance Monies and Assets existed and could be legally transferred.

3        36.    At all times, Applicant, his partners and predecessors believed that the Inheritance

4    Monies and Assets existed, that the rights to the monies were legitimate and that they could

5    lawfully acquire an interest in the monies and assets.

6        37.    At all times, Applicant, his partners and predecessors were committed to the fact

7    that before anyone was entitled to receive and take any of the Inheritance Monies and Assets that

8    all taxes, customs duties, transfer fees and other government and regulatory compliance

9    requirements were met and that when the money was actually transferred, it would be clean and

10   not the subject of any illegal or unlawful activity.

11       38.    Applicant, his partners and predecessors considered this to be a lawful business

12   investment to which they would contribute time, energy and monies in exchange for the return of

13   the Inheritance Monies and Assets.

14       39.    Peters and Corkum gave Applicant, his partners and predecessors documents and

15   information that they claimed were given to them by persons / entities who were allegedly

16   responsible for getting the Inheritance Monies and Assets released.

17       40.    Unbeknownst to Applicant, his partners and predecessors, the persons / entities

18   who allegedly gave the information to Peters and Corkum were behind, part of and benefitted

19   from the Nigerian fraudulent scheme and that the documents and information give to Applicant,

20   his partners and predecessors was intended to mislead Applicant, his partners and predecessors

21   into believing that the alleged Inheritance Monies and Assets actually existed when they did not.

22       41.    Further, the persons / entities sought to deceive Applicant, his partners and

1    predecessors, into believing that if they paid the fees as per the instructions transferred through

2    Peters and Corkum that the Inheritance Monies and Assets would actually be released.

3        42.    Applicant, his partners and predecessors were told that what was needed to ensure

4    the transfer of the inheritance monies was the payment of various fees, invoices, costs or other

5    monies to persons and entities who had accounts at various banks in the United States.

6        43.    Applicant, his partners and predecessors were presented with various documents

7    all of which were transmitted by email or text messages and in which the domain names, email

8    addresses and documents themselves appeared on their face to be authentic.

9        44.    The documents and information presented to Applicant, his partners and

10    predecessors, were fakes and were part of a scheme designed and intended to trick Applicant, his

11    partners and predecessors to transfer monies to accounts throughout the United States, which

12    monies were then transferred onward to the persons / entities behind this Nigerian fraud or were

13    used to pay invoices for services related to different parts of the Nigerian Fraud.

14        45.    As relates to this Application, Applicant, his partners and predecessors were

15    directed to transfer monies to (i) the account at BoA where JUDAH was listed as a beneficiary or

16    account holder and (ii) the account at CITIBANK where FIRST CITY was listed as a beneficiary

17    or account holder.

18        46.    Using fake, forged and false documents, Applicant, his partners and predecessors

19    were "tricked" into sending the above referenced transfers.

20        47.    Applicant, his partners and predecessors were told that the monies they were

21    transferring to JUDAH to its account at BoA and to FIRST CITY to its account at CITIBANK

22    were to secure repatriation of the Inheritance Monies and Assets in which Applicant, his partners

1    and predecessors acquired an interest.

2         48.    Applicant, his partners and predecessors were not told that the monies they were

3    transferring to JUDAH to its account at BoA and to FIRST CITY to its account at CITIBANK

4    were being used for any other purpose, let alone being stolen through fraud.

5         49.    This relief requested will help the South African Police Services – SAPS Sinoville

6    Case # 347/01/2019 investigation and future prosecutions, as well as the FBI, the RCMP and

7    other law enforcement agencies they will get involved, (i) prosecute the fraud; (ii) make their

8    cases against the persons / entities involved with the scheme; (iii) identify all the persons/entities

9    involved with the fraud; (iv) shut down the fraud and (v) hold accountable all the persons and

10   entities who are / were behind and /or benefitted from the scheme.

11        50.    South African Police Services Capt. Eric Chiloane told Applicant that banks such

12   as BoA and CITIBANK to which monies were wired by Applicant, his partners and predecessors

13   would have important and relevant information about the fraud and that information could be

14   gleaned from knowing where the monies were transferred (if they were transferred onward) out

15   of the original accounts.

16        51.    The identity of some of the persons / entities involved with the scheme have been

17   discovered.  These persons / entities who / which are currently under investigation by South

18   African Police SAPS Sinoville Case # 347/01/2017 and others are under investigation by the FBI

19   New Orleans Field Office.

20        52.    Applicant, his partners and predecessors have no available recourse and no ability

21   on their own to secure the evidence related the monies they transferred to JUDAH to its account

22   at BoA or the monies they transferred to FIRST CITY to its account at CITIBANK.

1      **WITNESSES AND EVIDENCE IN WITNESSES POSSESSION**

2      53.     Witness BANK OF AMERICA (BoA) is located at 2344 Highway 6 South,

3 Houston, TX 77077 within this District.

4      54.     Witness JUDAH ENTERPRISES (JUDAH) is located at 2311 Village Stone Ct.,

5 Katy, TX 77493, within this District.

6      55.     Witness FIRST CITY is located at First City Tower, 1001 Fannin Street, Houston,

7 TX 77002 within this District.

8      56.     Witness CITIBANK is located at 811 Main Street, Houston, TX 77002, within

9 this District.

10      57.     On October 15, 2018 – Applicant and his partner and predecessors made two

11 transfers of $ 30,000.00 each to JUDAH's Acct # XXXXXXXX4874 at BoA (**See Exhibit 5).**

12      58.     On November 2, 2017, Applicant and his partners and predecessors made one

13 transfer of $50,000.00 to FIRST CITY's Acct # XXXX7981 at CITIBANK. (**See Exhibit 6.)**

14      59.     Applicant, his partners and predecessors do not and to this day still do not know

15 and have been unable to determine what businesses they are in which JUDAH and FIRST CITY

16 are engaged if at all and why it was that the below listed wire transfers were sent to JUDAH and

17 FIRST CITY and how the persons behind the fraud against Applicant, his partners and

18 predecessors used JUDAH and FIRST CITY in this fraud.

19      60.     Applicant is informed by the criminal investigators and prosecutors in South

20 African Police Services - SAPS Sinoville Case # 347/01/2019 – that the evidence in the

21 witnesses possession will provide some of this information, all of which is relevant and

22 important to the ongoing investigation and future prosecution.

61.     This application seeks ONLY information that is relevant to the South African Police Services – SAPS Sinoville Case # 347/01/2019 and states as to each witness that:

a.     BoA and CITIBANK should have information related to the above referenced transfers (See Exhibit 5 & 6) that would show (i) what due diligence and Know Your Client (KYC) information the bank received from its account holder to support the transfers of monies; (ii) what invoices were presented to the bank by the account holder showing the reason the monies were being transferred into its account; and (iii) where monies, if any, were transferred onward out of the original accounts; and

b.     JUDAH and FIRST CITY should have information related to the 15 specific transfers including but not limited to (i) instructions including the identity of the persons sending the instructions as to why JUDAH and FIRST CITY were receiving the transfers and (ii) instructions including the identity of the persons sending the instructions as to who and where any of the monies were transferred onward.

62.     The evidence to be produced and the testimony that will be elicited is for use in the Nigerian fraud investigations being conducted by South African Police Services – SAPS Sinoville Case # 347/01/2019 – in which Applicant is a party.  It may also be used in the FBI Field Office in New Orleans and the RCMP's investigation in which Applicant has an interest.

63.     Application is not seeking to circumvent evidence gathering laws or procedures in South Africa as the witness banks and witness account holders cannot be compelled by the South African investigating authorities to produce the evidence sought.   And, in that regard, the South African authorities have confirmed that they welcome the evidence that Applicant is attempting to gather in the US Courts and that evidence will be used in their investigation and future

1    prosecutions. **See Exhibit 1** - March 1, 2019 Email from Capt. Chiloane.

2       64.     This Application also does not seek to circumvent evidence gathering laws or

3    procedures in the United States or Canada both of which regularly accept evidence gathered

4    pursuant to 28 USC § 1782.

5       65.     This application is the only way to obtain the evidence from the witness banks

6    and witness account holders needed to present to the South African authorities and investigators

7    who are attempting to shut down this internet fraud and scheme and to hold accountable those

8    persons / entities within their jurisdiction for their wrongful acts against innocent persons.

9       66.     Granting of the relief sought presents no hardship or burden to (i) BoA or JUDAH

10    or (ii) CITIBANK or FIRST CITY because the evidence is in their possession in this district and

11    to the extent any of the evidence is electronically stored, it can / should easily be produced from

12    their servers, computer stored files and databases in this district.

13       67.     Granting this application is consistent with the principles of 28 U.S.C. § 1782 and

14    Fed R. Civ. P Rule 26. [6]

15    **WITNESSES NOT PARTIES TO FOREIGN PROCEEDING / INVESTIGATION**

16

17       68.     Witnesses (i) BoA and JUDAH and (ii) CITIBANK and FIRST CITY are not

18    parties, nor are they in privy, with any other party in South African Police Services – SAPS

19    Sinoville Case # 347/01/2019.

---

[6]     28 U.S.C. § 1782 provides that testimony shall be taken and documents / things produced in accordance with the Federal Rules of Civil Procedure). Fed. R. Civ. P. 26(d) provides that a district court may authorize early discovery for the parties' and witnesses' convenience and in the interests of justice. *See, e.g., IO Group, Inc. v. Does 1-65, 2010 WL 4055667, at \*2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL 3419189 (N.D. Cal. 2010) (*applicant should be given opportunity through discovery to identify unknown persons/entities*) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-77 (N.D. Cal. 2002)* and *Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999) (*factors to be considered when establishing good cause to learn the identity of an unknown entity through early discovery).

## THE APPLICATION IS CONSISTENT WITH SUPREME COURT PRINCIPLES

69.     The application is consistent with the principles and standards set forth in *Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004); Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc., No. 11-12879, 2012 WL 2369166 (11th Cir. June 25, 2012); see In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007); United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001); Kulzer v. Esschem. Inc., 390 Fed. Appx. 88, 91 (3d Cir. 2010);* The Ninth Circuit has held that applications for subpoenas pursuant to § 1782 may be filed *ex parte* because "[t]he witnesses can . . . raise objections and exercise their due process rights by motions to quash the subpoenas." *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).*

70.     Further, as reflected by the language of § 1782, its purpose is to provide federal court assistance in gathering evidence for use in a foreign tribunal. *See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004); and Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 84 (2d Cir. 2004)* (§ 1782 has "twin aims," i.e., "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts") (internal quotation marks omitted).

## EVIDENCE SOUGHT IS SPECIFIC & RELEVANT TO SOUTH AFRICAN POLICE SERVICES – SAPS SINOVILLE CASE # 347/01/2019

71.     This Petition seeks only specific information, also explained above in ¶¶ 57 and 58, that is relevant to the South African Police Services – SAPS Sinoville Case # 347/01/2019 investigation and future prosecutions and to show how the above referenced wire transfers (i) to JUDAH and its account at BoA and (ii) FIRST CITY and its account at CITIBANK and how

1   those transfers were part of the overall fraud that was run in part with the help of the South

2   African domains through / from which false and fake documents were sent to Applicant, his

3   partners and predecessors and specifically:

4       a.      the evidence from BoA and CITIBANK will show (i) what due diligence and

5   Know Your Client (KYC) information was received by the banks from their customers/account

6   holders JUDAH and FIRST CITY respectively (which information had to have been given to (i)

7   BoA and JUDAH and (ii) CITIBANK and FIRST CITY by the person / entity that was

8   responsible for directing that Applicant's partners and predecessors make the wire transfers and

9   for what purpose JUDAH and FIRST CITY were receiving monies from Applicant's partners

10  and predecessors who believed the monies were being sent to secure the repatriation of the

11  Inheritance Monies and Assets); (ii) what invoices and other documents were presented to BoA

12  by JUDAH and CITIBANK by FIRST CITY to show why it was that they were receiving

13  monies from a third party – to wit: Applicant's partners and predecessors; and (iii) where

14  monies, if any, were transferred onward out of the JUDAH account at BoA and the FIRST CITY

15  account at CITIBANK

16      72.     This evidence will assist in South African Police Services – SAPS Sinoville Case

17  # 347/01/2019 investigation and future prosecutions against the person who ran the fake domain

18  in South Africa from which documents and instructions were sent to Applicant, his partners and

19  predecessors, to ensure that the fraud was shut down and with which the South African Police

20  Services – SAPS Case # 347/01/2019 investigators and prosecutors can connect the transfers to

21  JUDAH's account at BoA and FIRST CITY's account at CITIBANK and the persons and

22  entities who organized, were behind and who benefitted from fraudulent scheme against

1   Applicant, his partners and predecessors were brought to justice.

2       73.    This application seeks ONLY information directly related to (i) how it came to be

3   that the above transfers were made to JUDAH's account at BoA and FIRST CITY's account at

4   CITIBANK; (ii) how it came to be that the monies which Applicant, his partners and

5   predecessors were told were being sent to JUDAH's account at BoA and FIRST CITY's account

6   at CITIBANK to secure the repatriation of the Inheritance Monies and Assets, instead came to be

7   used for other purposes; and (iii) where monies, if any, may have been sent out of the above

8   referenced accounts to persons / entities who was part of or benefited from the fraud against

9   Applicant his partners and predecessors.

10       74.    The requested information as limited to the October 15, 2018 transfers totaling

11   $60,000.00  made by Applicant and his partner and predecessors to JUDAH's Acct #

12   XXXXXXXX4874 at BoA (**See Exhibit 5)** and the November 2, 2017 transfer of $50,000.00 by

13   Applicant and his partners and predecessors made to FIRST CITY's Acct # XXXX7981 at

14   CITIBANK.  (**See Exhibit 6)** all of which will help in the criminal investigation presently being

15   conducted by the South African Police Services – SAPS Sinoville Case # 347/01/2019.  This

16   information will also help the investigations being conducted by the FBI Field Office in New

17   Orleans and the RCMP in Canada.

18       75.    The evidence to be produced and the testimony that will be elicited is for use in

19   the foreign investigation and future prosecutions related to this Nigerian fraud that are being

20   conducted by and part of the South African Police Services – SAPS Sinoville Case #

21   347/01/2019 in which Applicant is a party.

22

## PETITION IS MADE IN COMPLIANCE WITH 28 USC § 1782 REQUIREMENTS, CIRCUIT PRECEDENT & SHOULD BE GRANTED

### The Requirements of Section 1782 and Subpoenas Have Been Met

76.     28 U.S.C. § 1782(a), which provides: *The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.   The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.*

77.     Since 1948, "Congress [has] substantially broadened the scope of assistance federal courts could provide for foreign proceedings," per § 1782. *Intel, 542 U.S. at 247-48.*

78.     The use of *ex parte* applications is widespread and, in many cases, unremarked upon (and thus approved of *sub silentio*). *See, e.g., In re Request from UK Pursuant to Treaty Between Gov't of U.S. & Gov't of UK on Mut. Assistance in Criminal Matters in the Matter of Dolours Price, 685 F.3d 1, 6 (1st Cir. 2012), cert. denied, 133 S. Ct. 1796 (2013); Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 78 (2d Cir. 2012); In re Consorcio Ecuatoriano*

1   *de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 992 (11th Cir.

2   2012); *In re Clerici*, 481 F.3d 1324, 1329 (11th Cir. 2007).

3     79.   "The history of § 1782 reveals Congress' wish to strengthen the power of district

4   courts to respond to requests for international assistance." *Lo Ka Chun v. Lo To, 858 F.2d 1564,*

5   *1565 (11th Cir. 1988).*

6     80.   Congress has granted the district courts broad discretion in granting judicial

7   assistance under § 1782. *In re Application of Consorcio Ecuatoriano de Telecommunicaciones*

8   *S.A., 2012 WL 2369166, at *21 (11th Cir. 2012); In re Clerici, 481 F.3d 1324, 1331 (11th Cir.*

9   *2007); United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001).*

10     81.   The district court has authority to grant § 1782 application for judicial assistance

11   if the following statutory requirements are met: (1) request must be made "by a foreign or

12   international tribunal," or by "any interested person"; (2) request must seek evidence, whether it

13   be the "testimony or statement" of a person or the production of "a document or other thing"; (3)

14   evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4)

15   person/entity from whom/which discovery is sought must reside and be found in the district of

16   the district court ruling on the application for assistance. 28 U.S.C. § 1782(a); *In re Clerici, 481*

17   *F.3d at 1332, and In re Chevron Corp., 2010 U.S. Dist. LEXIS 47034, at *15.*

18     82.   An Applicant for judicial relief pursuant to 28 USC § 1782 must provide evidence

19   that a foreign proceeding (such as South African Police Services – SAPS Sinoville Case #

20   347/01/2019) is in existence or is contemplated and would be filed within a reasonable time. *See*

21   *Bravo Express Corp. v Total Petrochemicals & Refining USA, Inc. 613 Fed. Appx. 319 (5th Cir.*

22   *June 2, 2015), citing Tex. Keystone v Prime Natural Res. Inc., 694 F. 3d 548 (5th Cir. 2012);*

1   *Certain Funds, Accounts And/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*

2   *v. KPMG, LLP, 798 F.3d 113, 124 (2d Cir. 2015)* (requirement for proceeding within reasonable

3   contemplation is satisfied by showing that the proceeding is not speculative, is "more than just a

4   twinkle in counsel's eye); *In re Application of Ontario Principals' Council, No. MC- 14-00050-*

5   *PHX-SPL, 2014 WL 3845082, at \*2 (D. Ariz. Aug. 1, 2014) and In Re Ambercroft Trading Ltd.*

6   *Case No. 18-mc-80074-KAW (CAND - Decided Oct 3, 2018)* (1782 Relief may be granted so

7   long as there is reliable information that such proceedings will be commenced).

8         83.    Once the statutory requirements have been satisfied, the district court should

9   consider the following factors in deciding whether to exercise the discretion granted under §

10   1782: (1) whether "the person from whom discovery sought is a participant in the foreign

11   proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is

12   when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the

13   character of the proceedings underway abroad, and the receptivity of the foreign government or

14   the court or agency abroad to U.S. federal court judicial assistance"; (3) "whether the § 1782(a)

15   request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of

16   a foreign country or the United States"; and (4) whether the request is otherwise "unduly

17   intrusive or burdensome." *In re Clerici, 481 F.3d at 1334 (quoting Intel, 542 U.S. at 264-65).*

18         84.    The Supreme Court has held that § 1782 does not contain a "foreign-

19   discoverability requirement" – i.e., there is no requirement that the information sought be

20   discoverable under the law governing the foreign proceeding. Intel, 542 U.S. at 253. The Court

21   has further held that there is no requirement that a § 1782 applicant show "United States law

22   would allow discovery in domestic litigation analogous to the foreign proceeding." Id. at 263.

1    85.    Section 1782(a) further "directs judges to provide discovery assistance pursuant to

2    the Federal Rules of Civil Procedure," *Weber v. Finker, 554 F.3d 1379, 1383 (11ᵗʰ Cir. 2009)*, so

3    long as the order does not prescribe the practice and procedure of the foreign country or the

4    international tribunal.

5    86.    Section 1782 (a) can also be used to discover the identity of individuals behind

6    emails, domains and internet activity – which was how Applicant, his partners and predecessors

7    were instructed to make the October 15, 2018 transfers totaling $60,000.00  made by Applicant

8    and his partner and predecessors to JUDAH's Acct # XXXXXXXX4874 at BoA (**See Exhibit 5**)

9    and the November 2, 2017 transfer of $50,000.00 by Applicant and his partners and predecessors

10   made to FIRST CITY's Acct # XXXX7981 at CITIBANK.  (**See Exhibit 6**) - so that information

11   can be provided to foreign courts and investigating authorities.  *See In re Application for*

12   *Appointment of a Commissioner re Request for Judicial Assistance for the Issuance of Subpoena*

13   *Pursuant to 28 U.S.C. § 1782, No. C 11-80136 RS (MEJ), 2011 WL 2747302 (N.D. Cal. July 13,*

14   *2011)*

15                    **Applicant Has Met the § 1782(a) Statutory Requirements**

16   87.    The complaints pending and ongoing investigations by the South African Police

17   Services in SAPS Sinoville Case # 347/01/2019 is a foreign proceeding. *See 28 U.S.C. § 1782(a)*

18   *and In re Letters of Request to Examine Witnesses, 59 F.R.D. 625, 629 (N.D. Cal. 1973)*

19   ("crucial requirement is that the foreign body exercise adjudicative power and have an

20   adjudicative purpose").

21   88.    Applicant is the complainant and a party to the foreign proceeding. *See 28 U.S.C.*

22   *§ 1782(a) and Intel, 542 U.S. at 256* (stating that an interested person under § 1782 "plainly

1  reaches beyond the universe of persons designated 'litigant,'" although there is "[n]o doubt [that]

2  litigants are included among and may be the most common example").

3        89.    Applicant seeks only limited evidence in the form of witness testimony and

4  production of documents relevant to the October 15, 2018 transfers totaling $60,000.00 made by

5  Applicant and his partner and predecessors to JUDAH's Acct # XXXXXXXX4874 at BoA (**See**

6  **Exhibit 5)** and the November 2, 2017 transfer of $50,000.00 by Applicant and his partners and

7  predecessors made to FIRST CITY's Acct # XXXX7981 at CITIBANK.  (**See Exhibit 6**).

8        90.    The discovery request is tailored and to the limited to the October 15, 2018

9  transfers totaling $60,000.00 made by Applicant and his partner and predecessors to JUDAH's

10  Acct # XXXXXXXX4874 at BoA (**See Exhibit 5)** and the November 2, 2017 transfer of

11  $50,000.00 by Applicant and his partners and predecessors made to FIRST CITY's Acct #

12  XXXX7981 at CITIBANK.  (**See Exhibit 6)**.

13        91.    The evidence to be produced and the testimony that will be elicited is for use in

14  the South African foreign proceeding South African Police Services – SAPS Sinoville Case #

15  347/01/2019 in which Applicant is a party.

16        92.    The evidence to be produced will assist the South African Police Services – SAPS

17  Sinoville Case # 347/01/2019 investigators understand how the aspect of the fraud that consisted

18  of "shipping stolen goods" through Southern California companies, with shipping payments

19  made to South California banks, were organized and implemented through electronic transfers,

20  fake documents and invoices, and this evidence will help them show the extent of the

21  wrongdoing by the South African who ran, operated and/or controlled the domain from which

22  the fake documents, statements and invoices were transmitted to Applicant, his partners and

1   predecessors and how the fraud to get Applicant, his partners and predecessors to pay the

2   shipping invoices (all the while believing they were paying monies to ensure the repatriation of

3   Inheritance Monies and Assets) were part and parcel of the entire fraud, so that the South African

4   authorities could take the necessary actions to stop this ongoing fraudulent scheme and prosecute

5   the persons involved and who / which benefited from this Nigerian Fraud and scheme.

6       93.     The discovery and evidence sought is from (i) BoA and JUDAH and (ii)

7   CITIBANK and FIRST CITY all of which are located and can be found in the district of the

8   district court ruling on the application for assistance. *See 28 U.S.C. § 1782(a)*.

9       **Discretionary Factors Favor Granting Applicant's § 1782 Application**

10      **Witnesses are Outside Jurisdictional Reach of South African Authorities**

11      94.     The witnesses (i) BoA and JUDAH and (ii) CITIBANK and FIRST CITY are not

12  the subjects of the criminal investigations pending in South Africa Police Services – SAPS

13  Sinoville Case # 347/01/2019.

14      95.     The Supreme Court held that since "nonparticipants in the foreign proceeding

15  may be outside the foreign tribunal's jurisdictional reach ..., their evidence, available in the

16  United States, may be unobtainable absent § 1782(a) aid." *Intel, 542 U.S. at 264.*

17      96.     A foreign tribunal has jurisdiction over those appearing before it and can itself

18  order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be

19  outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United

20  States, may be unobtainable absent § 1782(a) aid. *Id. at 264.*

21      97.     As such, the relevant evidence, documents and information in (i) BoA's and

22  JUDAH's and (ii) CITIBANK and FIRST CITY's possession, custody and control are not in the

1   possession of the foreign tribunal and would be accessible without judicial assistance in this

2   jurisdiction. *See In re Chevron Corp., 2010 U.S. Dist. LEXIS 47034, at \*20* (noting that

3   Ecuadorian court and tribunal lacked jurisdiction to compel the individual, who was located in

4   the district and not a party to the foreign proceedings, to produce the material sought) and *In re*

5   *Microsoft Corp., 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (finding section 1782 assistance*

6   *unnecessary and improper where the discovery requested was already in the foreign tribunal's*

7   *possession).*

8   <u>**Nature and Receptivity of South African Authorities & Tribunals**</u>

9   98.   Section 1782 (a) specifically provides *"The district court of the district in which a*

10   *person resides or is found may order him to give his testimony or statement or to produce a*

11   *document or other thing for use in a proceeding in a foreign or international tribunal, <u>including</u>*

12   *<u>criminal investigations conducted before formal accusation</u> . . . . "*

13   99.   § 1782 also authorizes and encourages judicial assistance even as to foreign

14   proceedings that have not yet commenced or advanced. See *In re: Clerici at 1333 n. 12 (citing*

15   *Intel, 542 U.S. at 248-49).*

16   100.   § 1782(a) contains no threshold requirement that evidence sought from a federal

17   district court would be discoverable under the law governing the foreign proceeding. See *Intel,*

18   *543 U.S. at 247; see also In re Clerici, 481 F.3d at 1333 n.12.*

19   101.   Applicants need not meet a foreign discovery requirement prior to being entitled

20   to assistance under § 1782. *See In re Application of Winning, 2010 WL 1796579 at \*10, n.7.*

21   102.   However, to the extent the Court wishes to enquire about this, the March 1, 2019

22   email from South African Police Services Capt. Chiloane confirms that whatever evidence he is

1   able to secure from procedures in the United States will be welcomed in the investigation and

2   future prosecution of SAPS Sinoville Case # 347/01/2019.  **See Exhibit 1.**

3                         **This Application is NOT a Fishing Expedition**

4          103.    Federal Courts must guard against the use of § 1782 Requests to investigate

5   whether litigation is possible before launching a claim as well as attempts to collect evidence for

6   the purpose of "developing" evidence for some future criminal or civil case.  *See In re Sargeant,*

7   *278 F. Supp. 3d 814 (SDNY 2917).*

8          104.    This Application is not a fishing expedition.  It is not being used to investigate

9   whether a future claim can be made or to collect evidence for the purpose of developing / using it

10  for some future criminal or civil case. *See In re: Sargeant, supra.*

11         105.    The evidence sought in this Application is for use in the South African Police

12  Services – SAPS Sinoville Case # 347/01/2019 in which Applicant is the complaining witness

13  and which evidence will allow the South African investigators and prosecutors to have the

14  evidence to show the connection between the October 15, 2018 transfers totaling $60,000.00

15  made by Applicant and his partner and predecessors to JUDAH's Acct # XXXXXXXX4874 at

16  BoA **(See Exhibit 5)** and the November 2, 2017 transfer of $50,000.00 by Applicant and his

17  partners and predecessors made to FIRST CITY's Acct # XXXX7981 at CITIBANK.  **(See**

18  **Exhibit 6)** and that portion of the fraud run out of South Africa through and from which fake

19  documents, emails and domains were used to fraudulently induce Applicant, his partners and

20  predecessors  The evidence may also be used in the ongoing investigation by the FBI New

21  Orleans Field office and the RCMP investigation in which Applicant has an interest.

22         106.    The South African Police Services – SAPS Sinoville Case # 347/01/2019

1    investigation exists and are ongoing. The FBI and RCMP investigations exist and are ongoing.

2    And, the Santa Clara County Sheriff's Department investigation that made the connection

3    between the broader Nigerian fraud against Applicant, his partners and predecessors to the part

4    of the fraud that tricked Applicant, his predecessors and partners to make the October 15, 2018

5    transfers totaling $60,000.00 made by Applicant and his partner and predecessors to JUDAH's

6    Acct # XXXXXXXX4874 at BoA (**See Exhibit 5**) and to make the November 2, 2017 transfer

7    of $50,000.00 by Applicant and his partners and predecessors made to FIRST CITY's Acct #

8    XXXX7981 at CITIBANK.  (**See Exhibit 6**).

9         107.    This § 1782 Application requests evidence that the law enforcement officials with

10   whom Applicant has been dealing have informed him the evidence as identified above must be in

11   the possession of witnesses (i) BoA and JUDAH and (ii) CITIBANK and FIRST CITY.

12                   **Applicant Is Not Attempting to Circumvent**
13        **South African Proof Gathering Restrictions and Policies**
14
15        108.    Applicant is not attempting to circumvent foreign proof-gathering mechanisms in

16   its efforts to secure this evidence but is attempting to gather evidence that is not otherwise

17   accessible to the foreign investigators and prosecutors and which  (i) will help in the

18   investigation and future prosecution of South African Police Services – SAPS Sinoville Case #

19   347/01/2019; (ii) will help identify the roles that each person/entities (presently known and as yet

20   to be discovered) played in behind the Nigerian fraud that was perpetrated against Applicant, his

21   partners and predecessors.  Applicant does not have to prove receptivity to show they are not

22   attempting to circumvent foreign proof-gathering mechanisms. *See, e.g., In re Chevron, 762 F.*

23   *Supp. 2d 242, 252 (D. Mass. 2010).*

24        109.    Applicants' request for judicial assistance in order to obtain the evidence from

1   witnesses (i) BoA and JUDAH and (ii) CITIBANK and FIRST CITY will help in the existing

2   investigations and future prosecutions in South African Police Services – SAPS Sinoville Case #

3   347/01/2019 and will help the investigators and prosecutors show how the Nigerian fraud against

4   Applicant, his partners and predecessors was perpetrated, including the Applicant's partners and

5   predecessors sending monies to JUDAH and FIRST CITY and how those monies was not used

6   to secure the repatriation of the alleged Inheritance Monies and Assets and the role played by

7   each person/entity involved with and benefitted from the fraud were inter-related and part of the

8   entire fraud

9         110.   Applicant, his predecessors and partners and Applicant is not attempting to

10   circumvent the foreign investigating authorities in South Africa's discovery methods and

11   restrictions. *See In re Application of Winning, 2010 WL 1796579 at \*10.*

12   **<u>Application Not Unduly Burdensome or Intrusive</u>**

13         111.   The requests made by Applicant are narrowly tailored to documents, evidence and

14   information that are directly related to the October 15, 2018 transfers totaling $60,000.00  made

15   by Applicant and his partner and predecessors to JUDAH's Acct # XXXXXXXX4874 at BoA

16   **(See Exhibit 5)** and the November 2, 2017 transfer of $50,000.00 by Applicant and his partners

17   and predecessors made to FIRST CITY's Acct # XXXX7981 at CITIBANK.  **(See Exhibit 6)**,

18   which documents, evidence and information are / should be in the possession, custody and

19   control of (i) BoA and JUDAH and (ii) CITIBANK and FIRST CITY.   As such, the request is

20   not overbroad nor burdensome. *See In re Consorcio Ecuatoriano, 2012 WL 2369166, at \*20 n.7*

21   *and Intel, 542 U.S. at 265.*

22         112.   The evidence requested is "relevant to the foreign proceeding", to wit: the

1    criminal investigation by South African Police Services – SAPS Sinoville Case # 347/01/2019.

2    *See In re Dr. Braga, 789 F. Supp. 2d at 1304; compare In re Consorcio Ecuatoriano, 2012 WL*

3    *2369166 at \*24 (holding that the discovery is plainly relevant to the foreign proceedings where*

4    *they formed the basis for the defenses in those proceedings), Kang v. Noro- Moseley Partners,*

5    *246 Fed. App'x. 662, 664 (11th Cir. 2007) (denial only due to "irrelevance of requested*

6    *discovery to the nature of the foreign proceedings").*

7        113.    As witnesses (i) BoA and JUDAH and (ii) CITIBANK and FIRST CITY are not

8    participants in or subject to the jurisdiction of the South African investigating authorities, it is

9    uncertain that the evidence, documents and information they possess can be accessed without the

10   granting of this request, as such are "outside the foreign tribunal's jurisdictional reach." *See*

11   *Intel, 542 U.S. at 244.*

12       114.    The documents witnesses (i) BoA and JUDAH's and (ii) CITIBANK's and

13   FIRST CITY''s possession, custody and control are relevant and have evidentiary value to the

14   South African Police Services – SAPS Sinoville Case # 347/01/2017 and providing the requested

15   evidence does not subject (i) BoA and JUDAH and (ii) CITIBANK and FIRST CITY to undue

16   burden. *See Fed. R. Civ. P. 45(c)(3)(iv), Int'l Ass'n of Machinists and Aerospace Workers v.*

17   *P&B Transp., 2007 WL 4145974, at \*2 (M.D. Fla. 2007); Fadalla v. Life Automative Products,*

18   *Inc., 258 F.R.D. 501, 504 (M.D. Fla. 2007) (citing Wiwa v. Royal Dutch Petroleum Co., 392*

19   *F.3d 812, 818 (5th Cir. 2004).*

20       115.    The discovery requests are limited to very specific activity JUDAH's Acct #

21   XXXXXXXX4874 at BoA (**See Exhibit 5**) and t FIRST CITY's Acct # XXXX7981 at

22   CITIBANK.  (**See Exhibit 6**) and as such they are sufficiently tailored so that they are directly

1    relate to the South African Police Services – SAPS Sinoville Case # 347/01/2019 investigation

2    and future prosecutions and will assist in the future investigation and prosecutions of persons /

3    entities involved with and who/which benefitted from the Nigerian fraud against Applicant, his

4    partners and predecessors. *See In re Consorcio Ecuatoriano, 2012 WL 2369166 at *25 (holding*

5    *that discovery was appropriately tailored as it "limit[ed] the request to information" within a six*

6    *year time period relating to one specific contract and the deposition of a person most*

7    *knowledgeable), with Advanced Micro Devices, Inc. v. Intel Corp., 2004 U.S. Dist. LEXIS 21437*

8    *(on remand from the Supreme Court, the district court found the 1782 application to be "unduly*

9    *intrusive and burdensome [since there was] . . . no attempt to tailor its application to the subject*

10   *matter of the EC Complaint").*

11                    **Applicant's Requests Satisfies Fed. R. Civ. P. Rules 26 & 45 Requirements**

12                                               **FRCP Rule 26**

13        116.    Discovery under § 1782 is guided by the applicable standards found in the Federal

14   Rules of Civil Procedure. *See 28 U.S.C. § 1782* (providing that, "[t]o the extent that the order

15   does not prescribe otherwise, the testimony or statement shall be taken, and the document or

16   other thing produced, in accordance with the Federal Rules of Civil Procedure).

17        117.    A court may authorize early discovery for the parties' and witnesses' convenience

18   and in the interests of justice. Fed. R. Civ. P. 26(d). Courts in this district generally consider

19   whether a plaintiff has shown "good cause" for the early discovery. *See, e.g., IO Group, Inc. v.*

20   *Does 1-65, 2010 WL 4055667, at *2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL*

21   *3419189 (N.D. Cal. 2010); Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-*

22   *77 (N.D. Cal. 2002).*

118.   To the extent that some of the evidence to be provided by witnesses (i) BoA and JUDAH and (ii) CITIBANK and FIRST CITY identifies a person/ entity whose involvement in the fraud against Applicant, his partners and predecessors is not currently known, Applicant should be given an opportunity through discovery to identify these unknown persons/entities, unless it is clear that discovery would not uncover the identities, or no valid claim could be made against them. *See Solarbridge, 2010 WL 3419189, at \*1 and Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980)).*

119.   The evidence for which § 1782 Relief is sought by Applicant is in the possession, custody and control of witnesses (i) BoA and JUDAH and (ii) CITIBANK and FIRST CITY and is limited to evidence, documents and information that will assist in the ongoing investigations and future prosecutions of the persons and entities behind the internet fraud against Applicant, his partners and predecessors and will assist the foreign investigating authorities show the interaction between the broader internet fraud being run in part out of South Africa and the portion of the fraud that tricked Applicant, his partners and predecessors to make the October 15, 2018 transfers totaling $60,000.00  made by Applicant and his partner and predecessors to JUDAH's Acct # XXXXXXXX4874 at BoA (**See Exhibit 5)** and the November 2, 2017 transfer of $50,000.00 by Applicant and his partners and predecessors made to FIRST CITY's Acct # XXXX7981 at CITIBANK.  (**See Exhibit 6)** (which monies were NOT used to help secure the repatriation of the Inheritance Monies and Assets as Applicant, his partners and predecessors were lead to believe but were to pay for other unintended purposes or uses which purposes and used can be shown through the requested documents and evidence.  As such, the request does not violate the requirements of Fed. R. Civ. P. Rule 26.

1

2                                            **FRCP Rule 45**

3         120.    Under FRCP Rule 45(a)(1)(C) a subpoena may command a nonparty served to

4    produce documents that are in its "possession, custody, or control."

5         121.    "Control is defined not only as possession, but as the legal right to obtain the

6    documents requested upon demand." *Searock v. Stripling, 736 F.2d 650, 653 (2d Cir.*

7    *1984).* "Control" may also be found where an entity has "access to" and the "ability to obtain

8    the documents." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 144*

9    *(S.D.N.Y. 1997); see also, e.g., In re Ski Train Fire of November 11, 2000 Kaprun Austria, 2006*

10   *WL 1328259, \*5 (S.D.N.Y. 2006) (same); Addamax Corp. v. Open Software Found., Inc., 148*

11   *F.R.D. 462, 467 (D. Mass. 1993).*

12        122.    "Access" and "ability to obtain documents" is found where "documents ordinarily

13   flow freely between" persons or entities. *Hunter Douglas, Inc. v. Comfortex Corp., No. CIV. A.*

14   *M8-85, 1999 WL 14007, at \*3 (S.D.N.Y. Jan. 11, 1999).*

15        123.    The evidence needed by Applicant is or should be in the possession, custody and

16   control of witnesses (i) BoA and JUDAH and (ii) CITIBANK and FIRST CITY.  To the extent

17   there are any documents that may technically be in the control of another over whom / which (i)

18   BoA and JUDAH and (ii) CITIBANK and FIRST CITY have control, those documents are also

19   within the possession, custody and control of (i) BoA and JUDAH and (ii) CITIBANK and

20   FIRST CITY.  The evidence in witnesses (i) BoA's and JUDAH's and (ii) CITIBANK's and

21   FIRST CITY's possession, custody and control is needed to assist in the ongoing criminal

22   investigations and future prosecutions of and to understand the roles played by each persons and

1  entities who / which are part of and which benefitted from the Nigerian fraud against Applicant,

2  his partners and predecessors. *See In Re Imanagement Servs., 2005 U.S. Dist. LEXIS 17025, \*10*

3  *(E.D.N.Y. Aug. 16, 2005); and Fleischmann v. McDonald's Corp., 466 F. Supp. 2d 1020, 1031*

4  *(N.D. Ill. 2006).*

5  **CONCLUSION**

6      124.   **WHEREFORE,** in view of the foregoing, Applicant prays (i) for an Order (in the

7  form attached) directing / permitting the issuance of subpoenas duces tecum (in the forms

8  attached) to BANK OF AMERICA, JUDAH ENTERPRISES, CITIBANK and FIRST CITY to

9  appear and testify and produce the limited categories of evidence, information, records and

10  documents and (ii) for such other and further relief as is just and appropriate and consistent with

11  28 U.S.C. § 1782.

12

13                            Respectfully submitted,

14

15

16  Dated: April 22, 2019                   /s/ Edward D. Fagan

17

18                            Edward D. Fagan, Pro Se

19                            590 NE Wavecrest Way

20                            Boca Raton, FL. 33432

21                            Tel. (561) 757-5432

22                            Email: faganinternational@gmail.com

23                              Applicant Pro Se

# EXHIBIT   1

 Gmail

Edward Fagan <faganinternational@gmail.com>

## 419 Scam Case Statement

**GP:DPCI CCU - Capt Chiloane** <ChiloaneEric@saps.gov.za>                    Fri, Mar 1, 2019 at 4:40 AM
To: "faganinternational@gmail.com" <faganinternational@gmail.com>

To whom it may concern

It would be helpful if you could stay to work with our investigators through until Tuesday May 5th

We want to include our colleagues at the Cyber Crime Unit (419 Scam) and Interpol and perhaps the US

Authorities since this matter involves transfers of US currencies

We will appreciate the evidence that you are trying to secure from your applications to the United States

Courts and witnesses in the United States to help us in our Investigation and future prosecution of the

Individuals/entities who are responsible for the crimes against you your partners

Regards

## Captain CHILOANE E

## SERIOUS COMMERCIAL CRIME INVESTIGATION : DPCI Gauteng

## Cell: 071 481 3402

## Email Internal: GP:DPCI CCU - Capt Chiloane

## Email External: ChiloaneEric@saps.org.za



H A W K S

 Gmail

Edward Fagan <faganinternational@gmail.com>

## Sinoville CAS 347/01/2019

**GP:DPCI CCU - Capt Chiloane** <ChiloaneEric@saps.gov.za>
To: Interpol | Central Mail <interpol@saps.gov.za>
Cc: Edward Fagan <faganinternational@gmail.com>

Wed, Mar 27, 2019 at 1:47 AM

Dear Sir/Madam

The subject serves as reference

Mr E.D. Fagan ,the complainant who fell victim to internet fraud where over R181 000 000.00 (one hundred and eighty one million rand) was lost

Deposited money into around the world in countries like USA and China to mention few. The case is highly complicated and requires

Assistance at international Level

Please advise on the above matter

Your assistance on this matter will be highly appreciated

## Captain CHILOANE E

## SERIOUS COMMERCIAL CRIME INVESTIGATION : DPCI Gauteng

## Cell: 071 481 3402

## Email Internal: GP:DPCI CCU - Capt Chiloane

## Email External: ChiloaneEric@saps.org.za



MR
EDWARD DAVIS    Fabian

505608931

1952110 2 0

American

3.45 ULEIROOS

Linowille
Pretoria

082983125 m

SHONE WAVE CREST WAY

BOCA RATON
FLORIDA

+1 5614000281



# EXHIBIT 2

 Gmail

Edward Fagan <faganinternational@gmail.com>

## Misc Follow Up Regarding Nigerian Fraud

**Bradford, Krista C. (NO) (FBI)** <kcbradford@fbi.gov>
To: Edward Fagan <faganinternational@gmail.com>

Wed, Mar 6, 2019 at 9:17 PM

Mr. Fagan,

We will meet at the FBI office tomorrow: 2901 Leon C Simon Blvd, New Orleans, La. Park outside the gate. I will let the security guards know you are coming.

Please bring with you any documentation and contact information for all other law enforcement agencies involved.

Regards,

Krista

-
[Quoted text hidden]

 Gmai

Edward Fagan <faganinternational@gmail.com>

## Follow Up

**Bradford, Krista C. (NO) (FBI)** <kcbradford@fbi.gov>          Wed, Mar 13, 2019 at 11:21 AM
To: Edward Fagan <faganinternational@gmail.com>

Good morning Mr. Fagan,

I am following up from our meeting last week.

Can you please send me the contact information for your associates?

Also, I would appreciate the wire instructions and wire details for Johnbull Ejovi and David Gory as soon as you are able to get them together.

Thank you,

Krista Bradford

 Gmai                                    Edward Fagan <faganinternational@gmail.com>

## Nigerian Fraud

**Bradford, Krista C. (NO) (FBI)** <kcbradford@fbi.gov>                Wed, Apr 3, 2019 at 6:10 PM
To: Edward Fagan <faganinternational@gmail.com>

Hello, Mr. Fagan,

Have you had a chance to get the documents together related to the instructions for the wires?

Thank you,

Krista

-
[Quoted text hidden]

# EXHIBIT   3

**Mark**

| | |
|---|---|
| **From:** | Cogliandro,Cody (DAO) [ccogliandro@rtf.sccgov.org] |
| **Sent:** | Friday, December 01, 2017 9:15 AM |
| **To:** | 22mt54@awink.com |
| **Subject:** | Fraud |

Hi Mark,

Thank you for speaking with me regarding the wire payment you sent to the shipping company in Southern CA that sent stolen property to Nigeria.

Please send me the US wires you sent. It would be beneficial to stop more fraud from continuing.

Below is my information.

Sincerely,



Detective Cody Cogliandro #2167
REACT Task Force Agent/Santa Clara County Sheriff's Office Deputy
70 West Hedding Street, West Wing
San Jose, CA 95110
408-282-2435 (Desk)
408-590-7008 (Cell)

# EXHIBIT   4

# ASSIGNMENT

## SECTION 1 - THE PARTIES

### Party # 1 – R.W. Daneluk - Assignor

R. W. Daneluk (DOB _____/____) and located at 10504 100 Avenue, Fort St. John, BC V1J 1Z2 CANADA (hereinafter "Daneluk" or "Party # 1") is the owner of 100% of the interests and rights to recovery and ownership of certain claims for recovery of monies that were paid and sent by international wire transfers between 2016 to 2018 to various persons, entities, governmental institutions and financial institutions and which monies (hereinafter "Monies Paid / Wired") were paid and sent form, to and through certain banks and financial institutions located in Canada, the United States and elsewhere in the world as part of the purchase and recovery and acquisition of various assets including but not limited to estate assets, real property, leases, contract rights, outstanding contract revenue, personal property, unpaid but earned income, pension and retirement plans, monies held in bank accounts, assets deposited into safe-deposit boxes and vaults and/or real and personal property and assets and which "Monies Paid / Wired" certain third parties in bank accounts including but not to the below listed institutions and/other persons / entities who / which assisted with the transfer of monies:

**Bank and Financial Institutions Involved :**
Bank of America, Bank of Montreal, Barclays, BNP Paribas, Canadian Imperial Bank of Commerce, Citibank, Chase (JP Morgan Chase), Compass Bank, Credit Registry Corp (United Bank of Africa), East West Bank, Fidelity Investments, Fortis - Equity Bank, Huntington National Bank, M&T Grum, M.U.F.G Union Bank, PNC Bank, Royal Bank of Canada, Scotia Bank, Sun Trust, TD Bank, USAA, Western Union, Wells Fargo, Zhejiang Tailong Commercial Bank, The World Bank, and other similar institutions ...

**Other Persons / Parties or Institutions :**
Internet / Domain Service Providers, Lawyers, Government or Quasi-Government Agencies, Transportation Companies, Insurance Companies and such other persons / entities that were involved with the solicitation, sending and receiving of the "Monies Paid / Wired"

### Party # 2 – Edward D. Fagan - Assignee

Edward D. Fagan (DYOB _____/____) residing at 590 NE Wavecrest Way, Boca Raton, Fl. 33432 and US Passport # _____ (hereinafter "Assignee" or "Party # 2")

## SECTION 2 - ASSIGNOR & ASSIGNEE

2.1        Party # 1 Daneluk hereby assigns to Party # 2 Fagan the absolute right and

Initials:  _____  and  _____

authority to take actions indicated below on behalf of 100 % of Daneluk's interests in the recovery of the "Monies Paid / Wired" as described in Section 1.1 above and (i) to file administrative, regulatory, civil and criminal complaints, (ii) to make claims related to recovery of monies paid and transferred, (iii) to make claims to compel identification of the undisclosed parties to whom the paid and transferred monies may have been subsequently transferred by the banks and/or persons identified in class; and (iv) to make claims against the banks and other persons/institution who/which were involved with and/or benefited from the "Monies Paid / Wired".

2.2        Upon the successful conclusion of efforts and/or claims as explained above related to recovery of "Monies Paid / Wired" or when any portion of the "Monies Paid / Wired", plus interest and other damages, are returned, Party # 2 Fagan and Party # 1 Daneluk agree that recovered monies, plus any additional interest and/or other damages, shall be deposited into a Trust or Escrow account of a mutually agreed upon lawyer or accountant in Fort Saint John, British Columbia and the monies shall be retained in such Trust or Escrow account until the parties agree upon division of the recovered monies and payment of any unpaid fees and expenses incurred.

2.3        Upon the successful recovery of "Monies Paid / Wired", plus any additional interest and other damages, the parties further agree that they shall meet, discuss and agree upon an equitable and fair division of any additional monies and assets that may be recovered.

2.4        The assignment shall take effect as of this date and shall last up to and including

2.5        Party # 2 Fagan agrees to use his best efforts and diligence to pursue persons, entities, financial institutions, government institutions and others involved with "Monies Paid / Wired" and (i) locate and identify the entities responsible for and/or involved with the above referenced "Monies Paid / Wired", (ii) compel the return of "Monies Paid / Wired", plus appropriate interest and other damages and (iii) compel compliance of the return of other assets for which the "Monies Paid / Wired" were transferred, wired and paid.

2.6        Party # 1 Daneluk and Party # 2 Fagan shall agree upon a budget and payment of all ongoing fees, expenses and costs associated with the above stated purposes. Any fees, expenses and costs that may be incurred and which have not been agreed to by the Parties shall be borne exclusively by the Party who / which was responsible for incurring the fees, expenses and costs that were not included in the agreed upon budget.

2.7        This assignment is personal to Fagan and may NOT re-assigned to third parties or others without the prior written consent of Party 1.

Initials:  _____  and  _____

## SECTION 3 – CONDITION(S)

3.1 Party # 2 Fagan has paid ten dollars (US$10) and has provided other good and valuable consideration to Party # 1 Daneluk in order to purchase this Assignment.

3.2 Party # 2 represents that he will undertake and pursue civil and criminal claims which are intended to secure the return of the "Monies Paid / Wired", to secure the payment of damages and expenses and to identify and hold responsible all persons, entities, financial institutions and / or government agencies that were involved with and / or benefited from the "Monies Paid / Wired".

3.3 Party # 1 Daneluk understands and agrees that (i) Party # 2 Fagan is not and will not offer legal advice to Party # 1 Daneluk during the course of this work during this Assignment, (ii) Party # 1 Daneluk has his own lawyer and / or has had a chance to consult with his own lawyer prior to entering into this Assignment.

## SECTION 4 – WARRANTY

4.1 For purposes of this Assignment, Party # 1 Daneluk hereby warranties and confirms that has the absolute right to execute this assignment and that he will provide all reasonable cooperation with the Party # 2 Fagan to assist him in the performance of the obligations contained herein.

4.2 Insofar as legally permissible, any warranty as to Party # 2 Fagan's performance, success or results (other than Party # 2 Fagan's using its best efforts) to secure performance of the above contracts or to recover the advance fees paid or any other damages is disclaimed.

## SECTION 5 – OBLIGATION OF COOPERATION

Party # 1 Daneluk agrees to cooperate with Party # 2 Fagan with regard to the preparation of declarations, statements or evidence needed for applications to regulatory, administrative, civil and criminal investigations

## SECTION 6 – DUTY TO CONSULT & STRATEGIZE

Party # 2 Fagan agrees to consult and strategize with Party # 1 Daneluk the efforts he will take in the performance of his obligations contained herein. Party # 2 Fagan shall also consult and strategize with Party # 1 Daneluk with regard to any responses and/or opposition to Party # 2 Fagan's efforts.

## SECTION 7 – WRITTEN FORM & CHOICE OF LAWS, SEVERABILITY

Initials: ___ and ___

7.1 Attachments and addenda or corrections to this Assignment are not valid unless set forth in writing and notarized.

7.2 The Parties agree that this Assignment is governed by the laws of the United States and Canada and that in the event of any dispute related to this Assignment, the Court(s) of the United States and Canada shall both be deemed competent to hear and shall have jurisdiction over any dispute.

## SECTION 8 – DISPUTE RESOLUTION, BINDING ARBITRATION

8.1 In the event of a dispute between the parties, prior to being able to submit the dispute to a Court, the parties agree that the dispute must first be submitted for binding (and non-appealable) Arbitration in Canada or the United States, before the Canadian Arbitration Association ( https://canadianarbitrationassociation.ca/ ) or the American Arbitration Association ( https://www.adr.org/ ) and arbitrators shall be chosen from the list of recognized and approved arbitrators from either of those two Associations.

8.2 The Arbitration shall be conducted in accordance with the Rules of the American Arbitration Society and/or the Canadian Arbitration Society, depending upon the choice of Arbitration Associations.

8.3 In the event the dispute is submitted for Arbitration, the Arbitration shall be conducted and concluded within 6 months of the date it is submitted.

## SECTION 9 – MISCELLANEOUS PROVISIONS

9.1 Should individual provisions or clauses of this Assignment be or become invalid in whole or in part, the remaining provisions hereof shall continue to apply. The Parties agree to act in good faith in replacing the invalid provision by agreeing upon a valid provision that most closely approximates the spirit and purpose of the invalid provision.

9.2 Prior to executing this Assignment, each Party has had an opportunity to consult with his / their own counsel. This Assignment is made with full authority and knowledge of its terms, conditions and present.

9.3 It is agreed that Party # 1 Daneluk shall pay Party # 2 Fagan limited / reduced consulting fees and reimbursement of expenses according to a budget that shall be agreed upon by them. In the event, Party # 2 Daneluk refuses to agree upon a budget or does not timely pay the agreed upon budgeted fees and reimbursements, Party # 2 Fagan shall be return the Assignment and suspend or cease performance of the actions contemplated herein.

Initials: ___ and ___

**This Assignment is approved by the Parties as follows:**

**Assignor - Party # 1**

Dated: _Jan. 18, 2019_

Fort Saint John, British Columbia

Notarized By:

Dated: _Jan 18 /19_

Fort Saint John, British Columbia

Notary Seal

_R. W. Danciuk_

Print Name: _R.W. DANCIUK_

Address: _14847 ___ Ave ___ Fort St John B.C.___

Tel #: _250-785-___ (250785____)_

Email: _copac.victoryrosg.crm_
_copac.victoryrosg.crm cc_

**Assignee - Party # 2**

Edward D. Fagan accepts this Assignment according to the above terms / conditions.

Dated: _Jan. 16, 2019_

Boca Raton, Florida

Notarized By:

Dated:

Boca Raton, Florida

Notary Seal

_Edward D. Fagan_

Edward D. Fagan

Print Name: _Edward D. Fagan_

Address: _370 N.E. Wavecrest Way_
_Boca Raton FL 33432_

Tel #: _561-400-0286_

Email: _faganinternational@_
_Gmail.com_

Initials: _RWD_ and _[signature]_

# ASSIGNMENT

## SECTION 1 – THE PARTIES

**Party # 1 – Mark Meier - Assignor**

Mark Meier (DOB _5/22/1954_ located at 13593 Meier Road, Charlie Lake, BC V0C 1H0 – CANADA individually (hereinafter "Meier" or "Party # 1") is the owner of 100% of interests and rights to recovery and ownership of certain claims for recovery of monies that were paid and sent by international wire transfers between 2016 to 2018 to various persons, entities, governmental institutions and financial institutions and which monies (hereinafter 'Monies Paid / Wired') were paid and sent from, to and through certain banks and financial institutions located in Canada, the United States and elsewhere in the world as part of the purchase and recovery and acquisition of various assets including but not limited to estate assets, real property, leases, contract rights, outstanding contract revenue, personal property, unpaid but earned income, pension and retirement plans, monies held in bank accounts, assets deposited into safe deposit boxes and vaults and other real and personal property and assets and which 'Monies Paid / Wired' certain third parties in bank accounts including but not to the below listed institutions and other persons / entities who / which assisted with the transfer of monies:

**Bank and Financial Institutions Involved:**
Bank of America, Bank of Montreal, Barclays, BNP Paribas, Canadian Imperial Bank of Commerce, Citibank, Chase (JP Morgan Chase), Compass Bank, Credit Registry Corp (United Bank of Africa), East West Bank, Fidelity Investments, Fore – Equity Bank, Huntington National Bank, Money Gram, MUFG Union Bank, PNC Bank, Royal Bank of Canada, Scotia Bank, Sun Trust, TD Bank, USAA, Western Union, Wells Fargo, Zhejiang Tailong Commercial Bank, The World Bank and other sending intermediary, receiving and transferor/transferee banks and institutions as may be identified in the future.

**Other Persons / Entities or Institutions:**
Internet / Nominal Service Providers, Lawyers, Government Agencies, Government Agencies, Transportation Companies, Insurance Companies and such other persons / entities that were involved with the solicitation, sending and receiving of the "Monies Paid / Wired"

**Party # 2 – Edward D. Fagan - Assignee**

Edward D. Fagan (DOB: 20/10/52) residing at 590 NE Wavecrest Way, Boca Raton, FL 31432 and US Passport # 505698731 (hereinafter "Assignee" or "Party # 2").

## SECTION 2 – ASSIGNOR & ASSIGNEE

2.1    Party # 1 Meier hereby assigns to Party # 2 Fagan the absolute right and authority to take actions indicated below on behalf of 100 % of Meier's interests in the recovery,

Initials: _[signature]_ and _[signature]_

Page 1

of the "Monies Paid / Wired" as described in Section 1.1 above and (i) to file administrative, regulatory, civil and criminal complaints, (ii) to make claims to compel identification of the unidentified parties to whom the paid and transferred monies may have been subsequently transferred by the banks and/or persons identified in Section 1.1, and (iv) to make claims against the banks and other persons/institution who/which were involved with and/or benefited from the "Monies Paid / Wired".

1.2    Upon the successful conclusion of efforts and/or claims as explained above related to recovery of "Monies Paid / Wired" or when any portion of the "Monies Paid / Wired", plus interest and other damages, are returned, Party # 2 Fagan and Party # 1 Meier agree that recovered monies, plus any additional interest and/or other damages, shall be deposited into a Trust or Escrow account or a mutually agreed upon lawyer or accountant in Fort Saint John, British Columbia and the monies shall be retained in said Trust or Escrow account until the parties agree upon division of the recovered monies and payment of any unpaid fees and expenses incurred.

2.3    Upon the successful recovery of "Monies Paid / Wired", plus any additional interest and other damages, the parties further agree that they shall meet, discuss and agree upon an equitable and fair division of any additional monies and assets that may be recovered.

2.4    The assignment shall take effect as of this date and shall last up to and including

2.5    Party # 2 Fagan agrees to use his best efforts and diligence to pursue persons, entities, financial institutions, government institutions and others involved with 'Monies Paid / Wired' and (i) locate and identify the entities responsible for and/or involved with the above referenced 'Monies Paid / Wired', (ii) compel the return of 'Monies Paid / Wired', plus appropriate interest and other damages and (iii) compel compliance of the return of other assets for which the "Monies Paid / Wired" were transferred, wired and paid.

2.6    Party # 1 Meier and Party # 2 Fagan shall agree upon a budget and payment of all ongoing fees, expenses and costs associated with the above stated purposes. Any fees, expenses and costs that may be incurred and which have not been agreed to by the Parties shall be none exclusively by the Party who / which was responsible for incurring the fees, expenses and costs that were not included in the agreed upon budget.

2.7    This assignment is personal to Fagan and may NOT re-assigned to third parties or others without the prior written consent of Party 1.

## SECTION 3 – CONDITIONS

3.1    Party # 2 Fagan has paid ten dollars (USD) and has provided other good and

Initials: _[signature]_ and _[signature]_

Page 2

valuable consideration to Party # 1 Meier for this Assignment.

3.2 Party # 2 represents that he will undertake and pursue civil and criminal claims which are intended to secure the return of the "Monies Paid / Wired", to secure the payment of damages and expenses and to identify and hold responsible all persons, entities, financial institutions and / or government agencies that were involved with and / or benefited from the "Monies Paid / Wired".

3.3 Party # 1 Meier understands and agrees that (i) Party # 2 Fagen is not and will not offer legal advice to Party # 1 Meier during the course of this work during this Assignment, (ii) Party # 1 Meier has his own lawyer and / or has had a chance to consult with his own lawyer prior to entering into this Assignment.

## SECTION 4 – WARRANTY

4.1 For purposes of this Assignment, Party # 1 Meier hereby warranties and confirms that he has the absolute right to execute this assignment and that he will provide all reasonable cooperation with the Party # 2 Fagen to assist him in the performance of the obligations contained herein.

4.2 Insofar as legally permissible, any warranty as to Party # 2 Fagen's performance, success or results (other than Party # 2 Fagen's using its best efforts) to secure performance of the above contracts or to recover the advance fees paid or any other damages is disclaimed.

## SECTION 5 - OBLIGATION OF COOPERATION

Party # 1 Meier agrees to cooperate with Party # 2 Fagen with regard to the preparation of declarations, statements or evidence needed for applications to regulatory, administrative, civil and criminal investigations.

## SECTION 6 - DUTY TO CONSULT & STRATEGIZE

Party # 2 Fagen agrees to consult and strategize with Party # 1 Meier the efforts he will take in the performance of his obligations contained herein. Party # 2 Fagen shall also consult and strategize with Party # 2 Meier with regard to any responses and/or opposition to Party # 2 Fagen's efforts.

## SECTION 7- WRITTEN FORM; CHOICE OF LAWS; SEVERABILITY

7.1 Amendments and addenda or corrections to this Assignment are not valid unless set forth in writing and notarized.

Initials _____ and _____

Page 3

---

7.2 The Parties agree that this Assignment is governed by the laws of the United States and Canada and that in the event of any dispute related to this Assignment, the Court(s) of the United States shall both be deemed competent to hear and shall have jurisdiction over any dispute.

## SECTION 8 – DISPUTE RESOLUTION; BINDING ARBITRATION

8.1 In the event of a dispute between the parties, prior to being able to submit the dispute to a Court, the parties agree that the dispute must first be submitted for binding (and non-appealable) Arbitration in Canada or the United States, before the American Arbitration Association ( https://www.adr.org/ ) or the Canadian Arbitration Association ( https://adric.ca/arbitration-associations/ ) and arbitrators shall be chosen from the list of recognized and approved arbitrators from either of those two Associations.

8.2 The arbitration shall be conducted in accordance with the Rules of the American Arbitration Society and/or the Canadian Arbitration Society, depending upon the choice of Arbitration Associations.

8.3 In the event the dispute is submitted for Arbitration, the Arbitration shall be conducted and concluded within 6 months of the date it is submitted.

## SECTION 9 - MISCELLANEOUS PROVISIONS

9.1 Should individual provisions or clauses of this Assignment be or become invalid in whole or in part, the remaining provisions hereof shall continue to apply. The Parties agree to act in good faith in replacing the invalid provision by agreeing upon a valid provision that most closely approximates the spirit and purpose of the invalid provision.

9.2 Prior to executing this Assignment, each Party has had an opportunity to consult with his / their own counsel. This Assignment is made with full authority and knowledge of its terms, conditions and presents.

9.3 It is agreed that Party # 1 Meier shall pay Party # 2 Fagen limited / reduced consulting fees and reimbursement of expenses according to a budget that shall be agreed upon by them and any such fees and reimbursement of expenses by Party # 1 Meier will only be payable after there has been recovery of the "Monies Paid / Wired".

Initials _____ and _____

Page 4

This Assignment is approved by the Parties as follows:

**Assignor – Party #1**

Dated: ___ Jan 18 /19 ___
Fort Saint John, British Columbia

Notarized By:
Dated: ___ Jan 18 /19 ___
Port Saint John, British Columbia

Notary Seal

_____
Mark Meier

Print Name: _Steven CO2_
Address: _10760_ __109 st_
         _Ft__ St Jhnd B C_
Tel #: _250 262 4513_
Email: _ceorclestchesler.cc_

...................................

**Assignee – Party #2**

Edward D. Fagan accepts this Assignment according to the above terms / conditions.

Dated: _Jan. 18 2019_
Boca Raton, Florida

_____
Edward D. Fagan

Notarized By:
Dated: _____
Boca Raton, Florida

Notary Seal

Print Name: _Edward D. Fagan_
Address: _550 NE Monterey Way_
         _Boca Raton FL 23432_
Tel #: _341-400-0442_
Email: _fgsinternational@_
       _Smail.com_

Initials: [signatures]

Page 5

# EXHIBIT  5

Page 1 of 1

ROYAL BANK OF CANADA                                          ROYAL FUNDS TRANSFER
FORT ST JOHN BC                                                        2018 OCT 15

Branch Ref No...    01920-18288-199996      Value Date.....    2018 OCT 16
ICN...........                    From      Send Ref.....

Payment Amount.............$        30,000.00 USD  Charges For... Sender
Client Rate................        1.30965000      Serial No.....
Conversion Amount..........$        39,289.50 CAD
Wire Payment Fee Collected $           45.00 CAD
Not Present Fee............$            0.00 CAD
IBAN Fee...................$            0.00 CAD
Total Fees.................$           45.00 CAD
Client Pays Amount........$        39,334.50 CAD SRF Client No... 941956849

Ordering Customer:                          Remittance Information:
398793 BC LTD DBA R                         /RFB/ROUTING 011000025
BOX 291                                     /INV/BANK OF AMERICA
CHARLIE LAKE          BC V0C 1H0            /INV/ADDRESS: 2344 HWY 6 SOUTH
                                            /INV/ HOUSTON, TX, 77077

Debit Branch Name (Princ)..  FORT ST JOHN BC                    Account
        SOLE-OWNER .........01920 127-320-0
Debit Branch Name (Fees)...  FORT ST JOHN BC
                             01920 127-320-0

Intermediary Institution:                   Account With Institution: BOFAUS3N

                                            (    )
                                            BANK OF AMERICA, N.A.
                                            222 BROADWAY
                                            NEW YORK                   TX US

Beneficiary Account:         874

Beneficiary Customer:                       Sender To Receiver Information:
JUDAH ENTERPRISES
2311 VILLAGE STONE CT

KATY            TX 77493     US

Instruction Code:


    Additional charges may be deducted from the payment amount by the receiving bank and/or its
intermediaries ("Receiving Bank"). If this payment cannot be completed for any reasons beyond the
control of Royal Bank of Canada ("RBC") you may ask RBC for a refund and RBC shall make best efforts
to secure a refund from Receiving Bank and return those amounts to you. If conversion of funds is
requested, the rate of exchange will be RBC's rate established at the time the refund is converted.
If you need to make an inquiry regarding this payment or if you ask that RBC attempt to amend or
cancel this payment, additional charges will apply (except in cases where an error has been
established on the part of RBC or the Receiving Bank). RBC may, in its discretion and without notice
to you, delay in making the payment or decide not proceed with the payment, in which case RBC shall
refund of the payment amount and any applicable fees.
    RBC will not be responsible for any loss or damage suffered by you except where there has been
negligence on the part of RBC, and in any such case RBC will not be liable for any indirect,
consequential or exemplary damages (including but not limited to loss of profits), regardless of the
cause of action. In making the payment, your personal or business information and information on the
recipient, may be revealed to third parties. Since the payment will travel, the information related
to it will be subject to the laws of the jurisdiction in which the information is located or
processed at that time.

SIGNATURE(S): _____



Page 1 of 1

ROYAL BANK OF CANADA                                    ROYAL FUNDS TRANSFER
FORT ST JOHN BC                                                  2018 OCT 15

Branch Ref No...    01920-18288-199997        Value Date.....    2018 OCT 16
ICN...........                  From          Send Ref....

Payment Amount............$          30,000.00 USD  Charges For...  Sender
Client Rate...............            1.30965000     Serial No.....
Conversion Amount.........$          39,289.50 CAD
Wire Payment Fee Collected $            45.00 CAD
Not Present Fee...........$              0.00 CAD
IBAN Fee..................$              0.00 CAD
Total Fees................$             45.00 CAD
Client Pays Amount........$          39,334.50 CAD  SRF Client No... 941956849

Ordering Customer:                         Remittance Information:
398793 BC LTD DBA R
13544 OLD HOPE RD

CHARLIE LAKE     BC VOC1H0    CA

Debit Branch Name (Princ)..     FORT ST JOHN BC                      Account
          SOLE-OWNER .........01920 127-320-0
Debit Branch Name (Fees)...     FORT ST JOHN BC
                                01920 127-320-0

Intermediary Institution:                  Account With Institution: BOFAUS3N .

                                           BANK OF AMERICA, N.A.
                                           222 BROADWAY
                                           NEW YORK,
Beneficiary Account:                                                 NY US

Beneficiary Customer:                      Sender To Receiver Information:
JUDAH ENTERPRISES                          /ACC/BANK  ROUTING C11000025
2311 VILLAGE STONE CT                      /INS/BANK ADDRESS:
                                           /INT/2344 HIGHWAY 6 SOUTH
KATY         TX 77493    US                /REC/HOUSTON, TX, 77077

Instruction Code:


    Additional charges may be deducted from the payment amount by the receiving bank and/or its
intermediaries ("Receiving Bank"). If this payment cannot be completed for any reasons beyond the
control of Royal Bank of Canada ("RBC") you may ask RBC for a refund and RBC shall make best efforts
to secure a refund from Receiving Bank and return those amounts to you. If conversion of funds is
requested, the rate of exchange will be RBC's rate established at the time the refund is converted.
If you need to make an inquiry regarding this payment or if you ask that RBC attempt to amend or
cancel this payment, additional charges will apply (except in cases where an error has been
established on the part of RBC or the Receiving Bank). RBC may, in its discretion and without notice
to you, delay in making the payment or decide not proceed with the payment, in which case RBC shall
refund of the payment amount and any applicable fees.
    RBC will not be responsible for any loss or damage suffered by you except where there has been
negligence on the part of RBC, and in any such case RBC will not be liable for any indirect,
consequential or exemplary damages (including but not limited to loss of profits), regardless of the
cause of action. In making the payment, your personal or business information and information on the
recipient, may be revealed to third parties. Since the payment will travel, the information related
to it will be subject to the laws of the jurisdiction in which the information is located or
processed at that time.

SIGNATURE(S):

# EXHIBIT   6

